UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| JACOB WHEELER, <br><br> Plaintiff, <br><br> v. <br><br> RIGNET, INC., JAMES H. BROWNING, GAIL P. SMITH, STEVEN E. PICKETT, KEVIN J. O'HARA, MATTIA CAPRIOLI, DITLEF DE VIBE, KEVIN MULLOY, KEITH OLSEN, and BRENT K. WHITTINGTON, <br><br> Defendants. | Case No._____ <br><br> **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff Jacob Wheeler ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this action against RigNet, Inc. ("RigNet" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9. By the action, Plaintiff seeks to enjoin the vote on a proposed transaction, pursuant to which Viasat, Inc. ("Viasat") will acquire the Company through Viasat's wholly owned subsidiary Royal Acquisition Sub, Inc. ("Merger Sub") (the "Proposed Transaction").

2. On December 21, 2020, RigNet its entry into an Agreement and Plan of Merger (the "Merger Agreement") dated December 20, 2020. Pursuant to the terms of the Merger Agreement, Viasat would acquire RigNet. The Merger Agreement provides that each RigNet

stockholder shall receive 0.1845 shares of Viasat stock for each RigNet share they own (the "Merger Consideration"). Upon closing of the Proposed Transaction (which is valued at approximately $222 million) RigNet stockholders will own approximately 6% of the outstanding shares of the combined company, Viasat stockholders will own the remaining 94%.

3. On February 1, 2021, defendants caused to be filed a Form S-4 Registration Statement (the "Registration Statement") with the SEC. The Registration Statement, which recommends that RigNet stockholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning, among other things: (a) projections for RigNet, Viasat, and the combined company and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, Stifel, Nicolaus & Company, Incorporated ("Stifel"); (b) the background of the Proposed Transaction; and (c) potential conflicts of interest faced by the Company's financial advisor Lazard Middle Market LLC ("Lazard"). Defendants authorized the issuance of the false and misleading Registration Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. It is imperative that the material information omitted from the Registration Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to the Company's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

6. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.

**PARTIES**

9. Plaintiff owns, and has continuously owned at all times relevant hereto, RigNet common stock.

10. Defendant RigNet is a Delaware corporation with its principal executive offices located at 15115 Park Row Blvd, Suite 300, Houston, Texas 77084-4947 and an office location at 58 Inverness Dr., East Englewood, Colorado 80112.  The Company's common stock is traded on the NASDAQ Global Select Market under the ticker symbol "RNET."

11. Defendant James H. Browning ("Browning") has been Chairman of the Board since 2012 and a director of the Company since December 2010.

12. Defendant Gail P. Smith ("Smith") has been a director of the Company since January 17, 2018.

13. Defendant Steven E. Pickett ("Pickett") has been President and Chief Executive

Officer ("CEO") of the Company since May 2016 and a director of the Company since June 2016.

14. Defendant Kevin J. O'Hara ("O'Hara") has been a director of the Company since December 2010.

15. Defendant Mattia Caprioli ("Caprioli") has been a director of the Company since October 2013.

16. Defendant Ditlef de Vibe ("de Vibe") has been a director of the Company since May 2011.

17. Defendant Kevin Mulloy ("Mulloy") has been a director of the Company since March 2012.

18. Defendant Keith Olsen ("Olsen") has been a director of the Company since December 2010.

19. Defendant Brent K. Whittington ("Whittington") has been a director of the Company since December 2010.

20. Defendants identified in paragraphs 11 to 19 are collectively referred to herein as the "Board" or the "Individual Defendants."

21. Non-party Viasat is a Delaware corporation with its principal executive offices located at 6155 El Camino Real, Carlsbad, California 92009. Viasat's common stock trades on the NASDAQ Global Select Market under the ticker symbol "VSAT."

22. Non-party Merger Sub is a wholly-owned subsidiary of Viasat.

## SUBSTANTIVE ALLEGATIONS

**The Proposed Transaction**

23. On December 21, 2020, RigNet announced:

HOUSTON, Dec. 21, 2020 -- RigNet, Inc. (NASDAQ: RNET, the "Company"), a leading provider of ultra-secure, intelligent networking solutions and specialized

4

applications, announced that its Board of Directors has unanimously approved the Company's entry into a definitive agreement whereby Viasat Inc. (NASDAQ: VSAT) will acquire RigNet in an all-stock transaction representing an enterprise value of $222 million, including RigNet's net debt as of September 30, 2020, based on the closing price of Viasat common stock on December 18, 2020. The strategic combination creates a vertically integrated communications company serving customers in industries that include government, airlines, residential, energy, and others by providing cutting-edge connectivity from the satellite to the end customer and delivering premier managed communications services coupled with a suite of advanced application solutions that include real-time machine learning and advanced cybersecurity.

"We are excited to announce this strategic combination with Viasat, a leading global innovator in satellite technology and service delivery," said Steven Pickett, RigNet's President and Chief Executive Officer. "This is a transformative merger with a company that is highly diversified across a number of important verticals, maintains a strong balance sheet, and is planning to expand its global satellite coverage significantly through its upcoming ViaSat-3 constellation. We believe the merger will create new opportunities for the combined companies to serve customers even better in energy and to expand more rapidly into other vertical markets. The combined companies will also be able to further accelerate the growth of RigNet's industry-leading AI-backed machine learning business, Intelie, and our other specialized apps, across a broader customer base than RigNet could have reached independently."

Rick Baldridge, Viasat's President and Chief Executive Officer, commented, "We believe that RigNet will be a wonderful addition to Viasat's expanding commercial connectivity program. We admire what Steve and his team have built over the last several years, performing well relative to peers in the energy sector, moving up the stack, and delivering some truly exceptional capabilities that are unique among their competitors. We see RigNet as an important element in our global expansion efforts and expect to achieve accretive synergies that go well beyond traditional cost savings. There is tremendous upside potential here, and we look forward to closing the acquisition as quickly as possible so both companies and our stockholders can realize the benefits of the combination and fulfill our vision of connecting everyone, anywhere."

**Transaction Details**

Under the terms of the agreement, RigNet's stockholders will receive a fixed exchange ratio of 0.1845 shares of Viasat stock for each RigNet share owned. Based on the parties' volume weighted average prices ("VWAPs") for the 20 trading days ending on December 18, 2020, the transaction represents a 17.9% premium for RigNet's stockholders. Upon closing RigNet stockholders are expected to own approximately ~5.7% of Viasat's outstanding common stock. The all-stock transaction is intended to be tax-free to RigNet stockholders.

> The transaction, which is expected to close by mid-calendar year 2021, is subject to customary closing conditions and regulatory approvals, including the approval of RigNet's stockholders. An affiliate of KKR & Co. Inc., RigNet's largest shareholder, has entered into a support agreement in which it has agreed to vote in favor of approving the merger, subject to certain conditions.

**The Registration Statement Contains Material Misstatements or Omissions**

24. The Registration Statement was furnished to Company stockholders to solicit their votes in favor of the Proposed Transaction. The Registration Statement, however, misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of that deal. As such, the Registration Statement has been issued in violation of Sections 14(a) and 20(a) of the Exchange Act. The Individual Defendants, moreover, were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. They failed to do so.

25. As set forth herein, the Registration Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning, among other things:: (a) projections for RigNet, Viasat, and the combined company and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, Stifel; (b) the background of the Proposed Transaction; and (c) potential conflicts of interest faced by the Company's financial advisor, Lazard.

*Material Omissions Concerning Financial Projections for RigNet, Viasat and the Combined Company and Stifel's Financial Analyses*

26. The Registration Statement fails to disclose material information concerning the financial projections for RigNet, Viasat and the combined company, relied upon by Stifel for its financial analyses.

6

27.     Beginning at or around page 64, the Registration Statement attempts to describe various financial forecasts relied on and analyses prepared by Stifel in support of its "fairness opinion." The Registration Statement, however, fails to disclose: (a) the Viasat projections relied upon by Stifel and underlying assumptions reviewed with RigNet management; (b) the "recent developments" Stifel discussed with RigNet and Viasat management; (c) RigNet management's estimates of certain cost savings, operating synergies, merger charges and the pro forma financial impact of the merger on RigNet; (d) the cash flows generated by Viasat, utilized by Stifel for its discounted cash flow analysis; and (e) the pro forma cash flows to be generated by the combined company, utilized by Stifel for its pro forma discounted cash flow analysis.

28.     The Registration Statement also omits material information concerning Stifel's financial analyses.

29.     The Registration Statement does include certain information regarding Stifel's fairness opinion and the various valuation analyses performed in support of its opinion. The information that has been provided in that regard, however, fails to include such material information as the key inputs and assumptions Stifel employed in performing these analyses. Without this information, RigNet's public stockholders cannot fully understand Stifel's work. As a result, stockholders cannot determine what significance, if any, to place on Stifel's views regarding whether to vote in favor of the Proposed Transaction.

30.     The Registration Statement also fails to disclose discrete, material information regarding Stifel's work. The Registration Statement, for example, fails to disclose the individual multiples and financial metrics for each of the companies and transactions analyzed by Stifel in its respective *Selected Comparable Company* and *Selected Precedent Transactions* analyses for RigNet.

31. The Registration Statement also fails to disclose: (a) RigNet's estimated 2025 EBITDA or clarification that it is equivalent to 2025 Adjusted EBITDA; (b) the terminal values for the Company; and (c) the inputs and assumptions underlying the discount rate range of 12.0% to 14.0% as they pertain to Stifel's *Discounted Cash Flow Analysis* of RigNet.

32. In terms of assisting the Board to understand the relative value of Viasat, Stifel performed various analyses including a *Selected Comparable Company Analysis*. The Registration Statements description of that analysis, however, also omits material information including: (a) Viasat's estimated calendar year 2020 and 2021 revenue and Adjusted EBITDA; and (b) the individual multiples and financial metrics for each of the companies analyzed by Stifel.

33. And, with respect to Stifel's *Discounted Cash Flow Analysis* of Viasat, the Registration Statement fails to disclose: (a) Viasat's estimated 2024 EBITDA for its Satellite Services / Commercial segment and Government segment; (b) Viasat's estimated 2024 unlevered free cash flow; (c) quantification of the terminal values for Viasat; and (d) quantification of the inputs and assumptions underlying the discount rates of 7.0% to 9.0%.

34. With respect to Stifel's *Pro Forma Combined Company Discounted Cash Flow Analysis*, the Registration Statement fails to disclose: (a) the unlevered free cash flows for the pro forma combined company for calendar years 2021 through 2024; (b) estimated calendar year 2024 pro forma combined company EBITDA; (c) the relative contribution of RigNet and Viasat to projected sales for the pro forma company; (d) quantification of the inputs and assumptions underlying the discount rates of 7.0% to 9.0%; (e) pro forma combined net debt; and (f) the pro forma fully diluted share count of the combined company.

35. Finally, the Registration Statement fails to disclose Viasat's estimates of unlevered free cash flows from 2021 through 2024 as considered in connection with Stifel's *Exchange Ratio Implied by Discounted Cash Flow Analysis*.

36. When a banker's endorsement of the fairness of a transaction is touted to stockholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

37. The omission of this information renders the statements in the "RigNet Unaudited Forecasted Financial Information" and "Opinion of RigNet's Financial Advisor" sections of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning the Background of the Proposed Transaction***

38. The Registration Statement fails to disclose material information concerning the background of the Proposed Transaction, including whether any of the confidentiality agreements entered into by the Company in connection with the process leading to the merge agreement include standstill provisions or "don't-ask, don't-waive" ("DADW") standstill provisions that are still in effect. The latter, significantly, would preclude and presently are precluding any potential counterparty from submitting a topping bid for RigNet.

39. The failure to disclose the existence of DADW provisions creates the false impression that a potential bidder who entered into a confidentiality agreement could make a superior proposal for RigNet. If the potential acquirer's confidentiality agreement contains a DADW provision, then that potential bidder can only make a superior proposal by (a) breaching the confidentiality agreement—since in order to make the superior proposal, it would have to ask for a waiver, either directly or indirectly; or by (b) being released from the agreement, which if action has been done, is omitted from the Registration Statement.

40. Any reasonable RigNet stockholder would deem the fact that a likely topping bidder may be precluded from making a topping bid for the Company to significantly alter the total mix of information.

41. The omission of this material information renders the statements in the "Background of the Merger" section of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

*Material Omissions Concerning Lazard's Potential Conflicts of Interest*

42. The Registration Statement fails to disclose material information concerning the Company's financial advisor, Lazard, including the terms of Lazard's engagement. Specifically, the Registration Statement fails to disclose: (a) the amount of compensation Lazard has received or will receive in connection with its engagement as RigNet's financial advisor; (b) the amount of Lazard's compensation that is contingent upon the consummation of the Proposed Transaction; and (c) whether Lazard has performed any prior services for any parties to the Merger Agreement and, if so, the details thereof and the amount of compensation received in connection with such services.

43. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

44. The omission of this material information renders the statements in the "Background of the Merger" section of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

45. The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Registration

Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of RigNet will be unable to make a sufficiently informed decision whether to vote in favor of the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

**COUNT I**

**Against All Defendants for Violations of Section 14(a) of the
Exchange Act and SEC Rule 14a-9 Promulgated Thereunder**

46.   Plaintiff repeats and realleges each and every allegation contained above, as though fully set forth herein.

47.   During the relevant period, defendants disseminated the false and misleading Registration Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

48.   By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Registration Statement. The Registration Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about projections for RigNet, Viasat and the pro forma company, the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, Stifel, the background of the Proposed Transaction, and Lazard's potential conflicts of interest. The defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

49.   The omissions and false and misleading statements in the Registration Statement

are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

50. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

51. Because of the false and misleading statements in the Registration Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

**Against the Individual Defendants for Violation of Section 20(a) of the Exchange Act**

52. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

53. The Individual Defendants acted as controlling persons of RigNet within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of RigNet and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

54. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

55. In particular, each of the Individual Defendants had direct and supervisory

involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Registration Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of this document.

56.    In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Registration Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the directors.

57.    By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

58.    As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, RigNet's stockholders will be irreparably harmed.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against defendants as follows:

A.    Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

E. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated:  March 5, 2021                                **LONG LAW, LLC**

By:   */s/ Brian D. Long*
Brian D. Long (#4347)
3828 Kennett Pike, Suite 208
Wilmington, DE 19807
Telephone: (302) 729-9100
Email: BDLong@longlawde.com

*Attorneys for Plaintiff*